**CORUM MANAGEMENT CO., INC., and Texas Commerce Bank, et al., Appellants,**

v.

**AGUAYO ENTERPRISES, INC., Appellee.**

No. 4–87–00589–CV.

Court of Appeals of Texas, San Antonio.

July 20, 1988.

Rehearing Denied Aug. 24, 1988.

Wesley S. Coddou, Hoover, Bax & Shearer, Fletcher Etheridge, Reynolds, Shannon, Miller, Blinn & White, Houston, for appellants.

Milton I. Fagin, San Antonio, for appellee.

Before BUTTS, REEVES and CHAPA, JJ.

## OPINION

CHAPA, Justice.

This is a suit brought under the DTPA [1] involving the alleged misrepresentation of a lease entered into by appellee, Aguayo Enterprises, Inc., and appellants, Corum Management Company, Inc. (Corum), Texas Commerce Bank (Bank), and Rosa T. Kahn Trust (Trust). Pursuant to a jury verdict, the trial court entered judgment against appellants. We affirm.

The issues common to all appellants are as follows:

(1) whether the evidence is sufficient to support the jury finding on actual damages;

(2) whether the trial court erred in failing to disregard the jury finding on actual damages because the finding was "immaterial";

(3) whether the evidence is sufficient to support the jury finding on additional damages;

(4) whether the evidence is sufficient to support the jury findings on misrepresentation; and

(5) whether the evidence is sufficient to support the jury finding on attorney's fees.

Appellants, Bank and Trust, raise the following additional issues:

(1) whether the jury finding on rental payments is against the great weight and preponderance of the evidence;

(2) whether the trial court committed reversible error by rendering judgment in favor of appellee despite appellee's

1. Texas Deceptive Trade Practices—Consumer Protection Act found in TEX.BUS. & COMM. CODE ANN. §§ 17.41–17.826 (Vernon 1987).

failure to comply with TEX.PROP.CODE § 115.015; and

(3) whether the award of attorney's fees was proper.

In November 1982, Kermit Aguayo, a representative of appellee, met with appellants' representative, Abe Charski, to inquire into the availability of a particular commercial space which appellee wanted to lease for use as a restaurant.[2] The two met a second time in March 1983. At this meeting, Aguayo and Charski discussed specific details of the restaurant. Aguayo informed Charski that the restaurant would sell sandwiches, hot dogs, french fries, sausage, and ice cream at the outset, and pizza within three to four months of opening. Charski informed Aguayo that the plan would be fine with him; that appellee would have to bear the expense for any necessary installations for the operation of the "Sandwich Shop"; and that the use of "Sandwich Shop" in the use clause of the lease would be broad enough to include the sale of pizza. A lease was subsequently prepared and executed with the term "Sandwich Shop" in the use clause of the lease.

Several months later, appellee took possession of the premises. In November 1983, however, Charski informed appellee that the restaurant would not be allowed to sell pizza. Thereafter, appellee moved out of the premises and initiated this suit.

The case was tried to a jury on special issues. The jury found, inter alia, that appellants misrepresented the lease; that the misrepresentations were a producing cause of appellee's damages; that appellee's actual damages were $12,309.33; that appellant committed the representations knowingly; that additional damages were $36,927.99; that attorney's fees were $11,000.00, and that no rental payments were due from appellee. Based upon these findings, the trial court entered judgment against appellants and awarded appellee $36,927.99, plus attorney's fees.

In point of error one[3], appellants contend that there is no evidence or, alternatively, insufficient evidence to support the jury finding on actual damages.

■ Appellants contend that the evidence does not support the finding on actual damages because there is no evidence or insufficient evidence that appellee's expenses and cost of repairs were reasonable and necessary. Appellants state the general rule that in order to recover for expenses and costs of repair it must be shown that the expenses and costs of repairs were both reasonable and necessary. *See GATX Tank Erection Corporation v. Tesoro Petroleum Corporation*, 693 S.W.2d 617 (Tex.App.—San Antonio 1985, writ ref'd n.r.e.). However, in *Jacobs v. Danny Darby Real Estate, Inc.*, 750 S.W.2d 174 (Tex. 1988) (Kilgarlin, J., concurring), Justice Kilgarlin wrote:

The [DTPA] statute itself imposes no such requirement [of proof of reasonableness and necessity], nor should we engraft one where the legislature has refused to do so.... The present statute simply requires that the defendant's conduct "constitute a producing cause of action damages." DTPA § 17.50(a)(1). *Compare* section 17.50(d) (permitting recovery of "court costs and *reasonable and necessary* attorneys' fees:) (emphasis supplied). The legislature obviously knows how to require proof of reasonableness and necessity, yet it has declined to do so with respect to actual damages recoverable by consumers. This is at least consistent with the legislature's mandate that the DTPA be liberally construed and applied to promote its underlying purposes, which include protecting consumers against misleading and deceptive business practices and providing efficient and economical proce-

---

**2.** The record reflects that Bank was trustee of Trust, the legal owner of this particular piece of property. Corum had been employed to manage the property.

**3.** Corum filed a brief which assigned fourteen points of error. Appellants, Bank and Trust, filed a second brief which adopted Corum's brief and raised additional points of error. In discussing the points of error common to all appellants, we will refer to the points of error as they appear in Corum's brief.

dures to secure such protection. DTPA § 17.44.

*Jacobs, supra* at 176.

Although Justice Kilgarlin's reasoning exhibits logic and substance, as in the majority opinion in *Jacobs,* we need not address the issue of whether proof of reasonable and necessary expenses and cost of repairs is required under the DTPA.

If such proof is required under the DTPA, we hold there was sufficient evidence in the instant case.

In determining a no evidence point, appellate courts consider only the evidence supporting the jury's finding in its most favorable aspect and give effect to all reasonable inferences which may be properly drawn therefrom. In determining factually insufficient evidence points such courts consider the evidence supporting the jury finding and determine whether its probative effect is of sufficient strength to support the finding. And further, in determining factual insufficiency all evidence will be considered by courts of appeals to determine whether the jury's finding is so contrary to the great weight and preponderance of the evidence as to be unjust. *Dolenz v. Continental National Bank of Fort Worth,* 620 S.W.2d 572, 576 (Tex.1981); *Elliott v. Great National Life Insurance Co.,* 611 S.W.2d 620, 621 (Tex.1981); *In Re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951); Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error,* 38 TEX.L.REV. 361 (1960).

*Steinmetz & Associates, Inc. v. Crow,* 700 S.W.2d 276, 278 (Tex.App.—San Antonio 1985, writ ref'd n.r.e.).

Aguayo testified that he was employed by Motorola Incorporated as a manufacturing engineer and had attended the electrical engineering program at the University of Illinois in Chicago. He further testified that expenses were incurred for an exhaust hood which was required to operate the restaurant and an air take up unit which had to be installed with the exhaust hood in conjunction with the agreement made with appellants' agent. Additional expenses were incurred in the construction of the walls and counter and the installation of a gas line, plumbing, electricity, and floor tiles also required to operate a restaurant and in accordance with the agreement with appellants' agent. Aguayo also testified that costs were incurred in the repair of a window. We conclude that the record contains sufficient evidence in this respect and the jury's finding is not so contrary to the great weight and preponderance of the evidence as to be unjust. *See Jacobs v. Danny Darby Real Estate, Inc., supra; Great American Homebuilders, Inc. v. Gerhart,* 708 S.W.2d 8 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.). The point is overruled.

In points of error two through five, appellants contend the trial court erred in failing to disregard the jury finding on actual damages because the finding was "immaterial." [4]

The special issue which encompasses the actual damages reads:

SPECIAL ISSUE NO. 7

What sum of money, if any, will reasonably compensate Plaintiff for expenditures, if any, it made in equipping, repairing and preparing for use the leased premises?

Do not include any amount for wages or salaries or rent or electricity or telephone or advertising.

Answer in dollars and cents, if any.

We, the Jury, answer: $12,309.33

Appellants assert that there is no evidence to support the issue because the issue submits an improper measure of damages in that: 1) it is a finding of cost of expenditures and not a finding of damages, 2) it fails to apportion the expenses over the term of the lease, 3) it fails to offset the damages by any profit, and 4) it fails to apportion the cost associated with the mis-

4. Appellants alternatively argue that the trial court erred in denying their motion for new trial because there is insufficient evidence to support the jury finding on actual damages.

However, appellants' motion for new trial does not complain of the sufficiency of the evidence. Therefore, the complaint is waived. TEX.R. CIV.P. 324.

representation complained of (the sale of pizza). There was no objection to the issue submitted however, and none of the appellants requested an instruction on the proper measure of damages. Appellants therefore waived any error committed in measuring the damages. *See Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 538 (Tex.1981). We are thus limited under these circumstances to a review only of the no evidence assertion. *See Pool v. Dickson*, 512 S.W.2d 68 (Tex.Civ.App.—Tyler 1974, no writ). The record before us discloses evidence of expenditures in excess of the amount found by the jury in their answer to Special Issue No. 7. We therefore conclude there is evidence to support the issue. The point is overruled.

■ In points of error six, ten, eleven, and twelve, appellants contend that there is no evidence or, alternatively, insufficient evidence to support the jury's finding that appellants made certain representations to appellee concerning the lease.[5] After careful review of the entire record, we find sufficient evidence that the representations were made in conjunction with the lease which supports the jury's findings. The points are overruled.

■ In the seventh point of error, appellants contend that additional damages should not have been awarded in this case because there is insufficient evidence of actual damages. However, since we have already determined that the evidence is sufficient to support a finding of actual damages, appellants' argument fails. The point is overruled.

■ In point of error eight, appellants contend that there is no evidence or, alternatively, insufficient evidence to support the jury finding that appellants "knowingly" committed any of the representations.

The special issue reads:

SPECIAL ISSUE NO. 8

You are instructed that "knowingly" means actual awareness of the falsity, deception, or unfairness of the act or practice in question, but actual aware-

ness may be inferred where objective manifestations indicate that a person acted with actual awareness.

Did Defendants knowingly make or commit any of the representations or conduct that you have found was a producing cause of Plaintiff's damages in answers to Special Issues Nos. 2 and 6?

Answer "Yes" or "No."

We, the Jury, answer: <u>yes</u>

It is clear from the record that appellants were aware of appellee's plan to sell pizza; that when the lease was prepared and executed appellants represented that pizza would be allowed to be sold at the restaurant, and that shortly thereafter appellants did not allow the restaurant to sell pizza. The evidence is sufficient to support the finding that appellants "knowingly" committed the representation. The point is overruled.

In points of error thirteen and fourteen, appellants contend that there is no evidence, or alternatively, insufficient evidence to support the jury finding on attorney's fees. Specifically, appellants argue that the amount found by the jury includes time unrelated to the prosecution of this claim.

■ Appellants, however, failed to object to the broad attorney's fee issue submitted to the jury. Therefore, any complaint as to the attorney fee issue has been waived. *Matthews v. Candlewood Builders, Inc.*, 685 S.W.2d 649 (Tex.1985). The points are overruled.

■ Appellants, Bank and Trust, next contend that the jury finding on rental payments is against the great weight and preponderance of the evidence.

The special issue reads:

SPECIAL ISSUE NO. 11

What sum of money, if any, paid by Plaintiff will compensate Defendants for rental payments and other charges, if any, under the lease agreement?

Answer in dollars and cents, if any.

We, the Jury, answer: <u>0</u>

---

5. In points of error six and ten, appellants further contend that if we find the evidence insufficient, then subsequent findings based upon these findings cannot stand.

The record reflects that appellee left the premises and stopped paying rent on March 31, 1984. The premises, however, were relet to another tenant. The new tenant took possession on May 1, 1984, but did not begin making rental payments until July 1, 1984. Appellants argue that appellee was obligated under the terms of the lease for three months of rent (April–June) or, in the alternative, one month of rent (April). We disagree.

The DTPA was intended to permit the plaintiff to recover the greatest amount of "actual damages" factually caused by the defendant's misconduct. *Woo v. Great Southwestern Acceptance Corp.*, 565 S.W. 2d 290 (Tex.Civ.App.—Waco 1978, writ ref'd n.r.e.). In the instant case, the record indicates appellant's misconduct caused appellee to execute the lease in the first place. Without such misconduct, appellee would never have been obligated under the lease or in a position to move out of the premises. Therefore, the jury's answer to Special Issue No. 11 is not against the great weight and preponderance of the evidence. The point is overruled.

■ Bank and Trust next assert that the trial court committed reversible error by rendering judgment despite appellee's failure to comply with TEX.PROP.CODE § 115.015 (Vernon 1984).

Section 115.015 provides:

(a) A court may not render judgment in favor of a plaintiff in an action on a contract executed by the trustee or in an action against the trustee as representative of the trust for a tort committed in the course of the trustee's administration unless the plaintiff proves that before the 31st day after the date the action began or within any other period fixed by the court that is more than 30 days before the date of the judgment, the plaintiff gave notice of the existence and nature of the action to:

(1) each beneficiary known to the trustee who then had a present or contingent interest; or

(2) in an action on a contract involving a charitable trust, the attorney general and any corporation that is a beneficiary or agency in the performance of the trust.

(b) The plaintiff shall give the notice required by Subsection (a) of this section by registered mail or by certified mail, return receipt requested, addressed to the party to be notified at the party's last known address. The trustee shall give the plaintiff a list of the beneficiaries or persons having an interest in the trust estate and their addresses, if known to the trustee, before the 11th day after the date the plaintiff makes a written request for the information.

(c) The plaintiff satisfies the notice requirements of this section by notifying the persons on the list provided by the trustee.

The record reflects that on March 4, 1987, appellee made a written request for a list of beneficiaries. Despite several additional requests, Bank, as trustee, did not provide appellee with a list until May 27, 1987, almost three months after appellee's initial request. On July 24, 1987, a hearing was held on appellee's "Motion To Fix Period Of Time To Notify Beneficiaries And/Or Persons Having An Interest In Rosa T. Kahn Trust."[6] At the conclusion of the hearing, the trial court denied the motion and rendered judgment. Bank and Trust contend that the judgment should be reversed because the beneficiaries were not given adequate notice as required by § 115.015. We disagree.

The trustee is required to provide a list of beneficiaries within eleven days of the request for such list. A plaintiff satisfies the notice requirements of this section when he notifies those persons on the list provided by the trustee within the time

---

**6.** We note that it was the appellee, instead of the appellant, who moved to notify the beneficiaries prior to the judgment being entered. We note further that instead of joining the appellee in urging the court to grant the motion, appellant suggested that the statute he now relies upon might not be applicable. Appellant not only failed to object to the court denying the motion, but as the successful party, prepared the court order denying the motion. Thus, appellant not only failed to preserve the error, but encouraged the ruling of the court.

prescribed by the statute. In this case, Bank failed to provide a list of beneficiaries within the required time and it would be manifestly unjust to grant relief to a party based on a statute it has violated. Further, appellants failed to preserve the error and in fact encouraged the court's ruling that appellants now contend was erroneous.

*Republic National Bank of Dallas v. Robert Ventures, Ltd.*, 637 S.W.2d 515 (Tex.App.—Eastland 1982, writ ref'd n.r.e.) is the only case cited in appellants' brief which granted the relief requested by appellants. However, *Republic National Bank of Dallas* is clearly distinguishable. In that case, the trial court vacated its original judgment and allowed notice to be given to the beneficiaries. A hearing was subsequently held to give the beneficiaries an opportunity to show cause why judgment should not be rendered on the jury's verdict. The trial court then rendered final judgment more than thirty days after the notice was given. The case was reversed on appeal because the evidence during the hearing established a conflict between the interests of the beneficiaries and the interests of the trustee. The record before this Court, however, reflects no hearing at all. Therefore, there is no record on appeal which allows us to determine any conflicts between the interest of the beneficiaries and those of the trustee. The point is overruled.

Finally, Bank and Trust contend the award of attorney's fees must be reversed because the award of damages was improper. Since we have already sustained the damage award, this argument is without merit. The point is overruled.

The judgment is affirmed.